**IN THE COURT OF APPEALS OF IOWA**

No. 14-2051
Filed March 25, 2015

**IN THE INTEREST OF P.M.,**
**Minor Child,**

**J.M., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Marion County, Steven Guiter, District Associate Judge.

A father appeals from the order terminating his parental rights. **AFFIRMED.**

Jessica A. Millage of Millage Law Firm, P.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, Kathryn K. Lang, Assistant Attorney General, and Ed Bull, County Attorney, for appellee State.

Bryan Webber of Carr & Wright, P.L.C., Des Moines, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, J.**

The juvenile court terminated the father's rights pursuant to Iowa Code section 232.116(1)(h) (2013). The father contends the State failed to prove the grounds for termination by clear and convincing evidence and termination was not in the child's best interests. We affirm.

"We review proceedings terminating parental rights de novo." *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

Under Iowa Code section 232.116(1)(h), the juvenile court may terminate the rights of a parent to a child if: (1) the child is three years old or younger, (2) the child has been adjudicated a child in need of assistance (CINA), (3) the child has been out of the parent's custody for at least six of the last twelve months or the last six consecutive months, and (4) the "child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." *See id.* at 110-11.

At the time of the termination trial, which was held on October 8 and November 12, 2014,[1] the child was three years old. She was adjudicated a CINA on December 12, 2012, due to her parents' use of methamphetamine, domestic abuse concerns, and the parents' acknowledged inability to care for her. The child had been placed with her aunt and uncle (the father's sister and brother-in-law) in January 2013 and had remained in their care since then—far beyond the required six consecutive months.

The father challenges the evidence that the child cannot be returned to his custody at present. However, the father has lived in the same residence as the

---

[1] The mother's parental rights had been terminated previously and she did not appeal.

child since December 2013, but as of October 2014 had not taken an active role in caring for the child. In October 2014, the father had last provided the sole care for the child in July, and only for an hour or two. The father testified he worked second shift and overtime, and consequently he did not see his child on work days (leaving available four hours on Saturday and Sundays).

He also testified that working full time and overtime, he was bringing home about $2000 per month. He also testified he was receiving $300 per month in food assistance. His room and board with his sister was $200 per month and he paid child support for another child of about $600 per month. But he testified he was not then capable of taking care of his child financially alone. He also acknowledged he was not ready to assume exclusive care and control of his child.

The proceeding was continued to November 12, at which time the father's work schedule had changed somewhat—he was working Monday through Friday from 3:15 p.m. to 11:45 p.m. The father acknowledged that in the five weeks since the prior hearing he had not paid any support to his sister for the child. He was behind on his own rent, but had paid the rent on a four-bedroom residence where his paramour, her three teenage children, the father's brother, and the father's nephew lived. He did not know the name of his child's physician, dentist, or ophthalmologist. The father stated that a week after the last hearing, he had begun "put[ting] a pretty good effort into" taking his child to day care or school in the mornings. He claims he is capable of "minimally adequate" parenting, but the record provides clear and convincing evidence the child cannot be returned to his care at present without risk of neglect or lack of adequate supervision. *See A.M.*,

843 N.W.2d at 111 (noting that the statutory timeframe under section 232.116(1)(h) is six months, and "[i]f a child cannot be returned to the parents at that point, termination should occur so long as it is in the best interests of the child and the juvenile court does not find an exception to termination that warrants a different result").

"Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the [child's] best interests." *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012); *accord* Iowa Code § 232.116(2). We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Section 232.116(2) provides further that this best-interests consideration "may include any of the following":

> a. Whether the parent's ability to provide the needs of the child is affected by the parent's mental capacity or mental condition . . . .
> b. For a child who has been placed in foster family care by a court or has been voluntarily placed in foster family care by a parent or by another person, whether the child has become integrated into the foster family to the extent that the child's familial identity is with the foster family, and whether the foster family is able and willing to permanently integrate the child into the foster family. In considering integration into a foster family, the court shall review the following:
> (1) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining that environment and continuity for the child.
> (2) The reasonable preference of the child, if the court determines that the child has sufficient capacity to express a reasonable preference.

The child's uncle testified the child had been in his and his wife's home for almost two of her three years and that she identifies them as her parents. She

had "absolutely" become a part of the family and they were willing and able to provide her a permanent home. He also agreed they would "allow contact with the father assuming he was sober, safe, and appropriate."

The child's aunt testified that P.M. was fully integrated in their home. She stated P.M. came to their home when the aunt was pregnant with her own child and the cousins "in essence are siblings." She expressed concern for P.M. if removed from the home. She reluctantly testified her brother did not take advantage of all opportunities to be a caretaker to his daughter. She also stated the father would not be able to care for his child without assistance.

The father himself testified that if the court returned the child to him that day, he would not take her away from his sister's because "[i]t's where she's comfortable, and I wouldn't want to take her straight out of there."

We agree with the juvenile court's reasoning: "To establish permanency for [P.M.] the Court finds termination is necessary. The foster parents are willing to provide a safe and stable loving home for [P.M.], putting her needs above their own. [The father] has not done this even though he was given the opportunity." Termination will allow the "best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.*; *see A.M.*, 843 N.W.2d at 812 (discussing the child's integration into the grandparents' home and noting the grandmother intended to allow parents to continue a relationship with the child). We therefore affirm the termination of the father's parental rights.

**AFFIRMED.**